### SMITH v. HOFFMAN.     (No. 7898.)

(Court of Civil Appeals of Texas. Dallas. Feb. 9, 1918. Rehearing Denied March 2, 1918.)

TRIAL ⚖=333 — VERDICT—AMOUNT—RESPONSIVENESS TO ISSUES AND EVIDENCE.

Where plaintiff was entitled to judgment for $294.74, the difference between contract and market prices of cotton on date defendant breached delivery, or nothing, a verdict for plaintiff for $50, presumably based upon a compromise offer before suit, is not responsive to either issues or evidence, and must be set aside.

Appeal from Hill County Court; J. D. Stephenson, Judge.

Suit by A. L. Smith against H. Hoffman. Judgment for plaintiff in part, and he appeals. Reversed and remanded.

J. J. Averitte and Wear & Frazier, all of Hillsboro, for appellant. J. D. Abney and R. M. Vaughan, both of Hillsboro, for appellee.

RASBURY, J. Appellant sued appellee for $294.74 alleged to be the damages accruing to him by reason of appellee's failure to deliver 25 bales of cotton sold under parol agreement by the latter to the former. There was trial by jury, resulting in verdict for appellant for $50, followed by similar judgment, from which this appeal is taken.

The issues presented in the brief of appellant are, in substance, that the verdict is without support in the evidence. Accordingly it is necessary to state the essential facts deducible from the evidence. Those in support of appellant's theory of the transaction are that at some time after 11 o'clock of the morning of October 11, 1916, in Hillsboro, appellee sold appellant 25 bales of strict middling cotton of the approximate weight of 530 pounds per bale, at the agreed price of $16.07½ per hundred pounds, in evidence of which appellant gave appellee a written memorandum or "cotton ticket," stating the number of bales, the price and grade agreed on, and that payment was to be made through Citizens' National Bank. Appellee represented to appellant that he was in possession of and prepared to deliver the cotton. No agreement was made at the time of purchase when the cotton should be actually delivered, but when appellant learned, within two or three days after the purchase of the cotton, that delivery had not been made through the customary medium of tickets and checks passed through the local banks, he called upon appellee, who explained that delivery had not been made because the cotton he had was not of the grade sold. At this time appellant insisted that the cotton be delivered, and appellee promised it would be. About this time appellant was called away for several days, and upon his return again demanded that appellee deliver the cotton. Appellee again requested further time, and appellant agreed to wait until the following day, which was the tenth day after the sale. Appellee did not deliver the next day, whereupon appellant bought in the local market 25 bales of cotton weighing 13,173 pounds to take the place of that sold by appellee, and which appellant had in turn sold, paying therefor the prevailing market price, and which was $294.74 in excess of the price agreed to be paid to appellee for his cotton. It is customary in the Hillsboro market to deliver cotton at any time within 10 days after purchase, when sold under the terms

⚖=For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and circumstances surrounding the sale by appellee to appellant.

The facts deducible from the evidence which support appellee's theory of the contract are that at the time stated appellee did sell appellant 25 bales of strict middling cotton at $16.07½ per hundred pounds, to be delivered the day of the purchase. Appellee did not deliver the cotton as agreed, for the reason that when he went to the bank and checked up his holdings he ascertained he did not have the cotton he had sold, although he, in good faith, believed he had when he sold it. Appellee had no knowledge of the custom that allowed seller 10 days within which to make deliveries after sale. Appellee discussed with appellant his failure to deliver the cotton, and in several conversations told appellant he would deliver the cotton if he could buy it at the price he could have bought it on the day he sold.

Upon consideration of the conflict in the facts concerning the sale and purchase of the cotton, it is apparent that a verdict upon either theory would have been warranted; that is to say, a verdict for appellant for the amount sued for or the difference between the amount at which he bought from appellee and the amount which he paid for a similar amount and grade of cotton after appellee refused to deliver, or a verdict in favor of appellee. Incidentally, it was pleaded by appellee, and is argued here, that appellant, at most, was entitled to recover $1.87, the difference between the price at which he bought from appellee and the market price on the day agreed upon for delivery. While that fact is not of controlling importance, yet we are unable to find in the record any evidence concerning the market price of the cotton on the day upon which appellee claims delivery was to be made.

Recurring, then, to the issue made by appellant, do the facts related warrant the verdict? We conclude they do not, since the verdict is responsive to neither the issues nor the evidence. We readily concede it to be the function of the jury to find the facts, to reconcile conflicts in the evidence, to discard facts supporting one theory and to adopt those supporting another; also the wisdom of the resulting rule that denies to appellate courts authority to invade such jury functions. At the same time, the verdict must be founded upon facts reasonably deducible from the evidence. The verdict in the instant case is for appellant for $50, and, fairly put, is unwarranted. To have found any amount for appellant above the amount of $1.87 pleaded by appellee as his damages, assuming it was proven, was to adopt his theory of the contract. When that conclusion was reached, the amount of his loss as a result of appellee's failure to deliver the cotton was without contradiction, and an award for less damages than those proven,

particularly when the amount was liquidated and did not call for the exercise of any discretion by the jury, is a finding without support in the evidence, in that it is in disregard of unimpeached evidence and not compensatory. Upon what theory the verdict was awarded we are unable to say, unless it was upon the testimony of appellee, which we find in the record, that appellant offered at one time to accept $50 in compromise of his claim. Such offer of course cannot, for obvious reasons, support the verdict. We are not to be understood as saying that the appellant was or that appellee was not entitled to prevail in the contest, but only that the verdict as rendered was incorrect for the reasons stated, and as a consequence it becomes our duty to reverse the judgment and remand the case for another trial not inconsistent with the views herein expressed.

Reversed and remanded.